1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KEVIN RUSSELL MEYER,

11           Plaintiff,                    No. CIV S-06-2584 LKK GGH P

12       vs.

13   ARNOLD SCHWARZENEGGER, et al.,

14           Defendants.                   ORDER &

15   _____/      FINDINGS AND RECOMMENDATIONS

16   Background

17           Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  This action was originally transferred from the Northern District on November 17, 2006.

19   By Order, filed on April 10, 2007, the complaint was dismissed with leave to amend.  Plaintiff

20   filed a first amended complaint on May 9, 2007.  On October 3, 2007, the court found the first

21   amended complaint appropriate for service upon defendants Schwarzenegger (in his official

22   capacity), Grannis, Sullivan, Brimhall, Akintola, and Todd, but recommended dismissal of

23   defendant Schwarzenegger in his individual capacity only, which recommendation was

24   ultimately adopted by Order, filed on April 16, 2008.  On November 15, 2007, the court ordered

25   service upon the first amended complaint upon the defendants, after which defendants filed a

26   motion to dismiss, on January 18, 2008.  On the same day (# 22), plaintiff filed a document

1   entitled "supplemental briefing with exhibits to original petition."   On February 11, 2008,

2   plaintiff filed his opposition to the motion to dismiss, after which defendants filed their reply, on

3   February 19, 2008.[1]   On February 11, 2008, plaintiff also filed a request for a temporary

4   restraining order/preliminary injunction seeking physical therapy or a consultation with an

5   orthopedic consultation for his "chronic patellar tendonitis and knee pain."  Motion, pp. 2-3.  He

6   also sought to be assigned to a lower bunk to limit the pain he stated that he endures from having

7   to climb to and from an upper bunk.  Plaintiff's declaration, p. 8.  By Order, filed on April 4,

8   2008, the court directed defendants to file their response to the motion within 20 days.

9   Defendants filed an opposition to the TRO/preliminary injunction motion on April 23, 2008.

10  Motion for Leave to Vacate and Amend

11         On April 29, 2008, plaintiff sought leave to vacate his first amended complaint

12  and his request for a TRO/preliminary injunction, evidently belatedly concluding that his

13  amended complaint suffers from an "extreme deficiency."  Motion, filed on 4/29/08, p. 2.

14  Although plaintiff apparently believes he still has cognizable claims he appears to state that he

15  does not have a claim against the currently named defendants, ascribing the claimed deficiencies

16  in part on his allegedly having been suffering "a significant mental illness" at the time of filing

17  his original and first amended complaints. Id. at 3 & plaintiff's declaration at 5.  He seeks leave

18  to file a second amended complaint, as well as to amend his TRO request, stating that his current

19  filings no longer state a cognizable claim.  Plaintiff, however, failed to submit a proposed second

20  amended complaint with the motion.

21         As a litigant proceeding in forma pauperis, plaintiff's pleadings are subject to

22  evaluation by this court pursuant to the in forma pauperis statute.  See 28 U.S.C. § 1915.

23  Moreover, as plaintiff's complaint has already been amended once, plaintiff, pursuant to Fed. R.

24  Civ. P. 15(a)(2), "may amend [his] pleading only with the opposing party's written consent or the

25  _____

26         [1]  Plaintiff's subsequent "rebuttal" to the reply, on February 29, 2008 (# 29), is a filing not
    contemplated by the Local Rules or the Federal Rules of Civil Procedure and will be disregarded.

1   court's leave." Since plaintiff did not submit a proposed second amended complaint, the court is

2   unable to evaluate it and defendants are unable to determine whether they might stipulate to its

3   filing. Plaintiff's defective motion for leave to amend must therefore be denied. However,

4   plaintiff's recently expressed lack of confidence in the efficacy of his allegations does somewhat

5   undermine his position with regard to the remaining motions. Plaintiff's request to vacate his

6   motion for a TRO/preliminary injunction is denied as moot. See discussion below.

7   First Amended Complaint

8           In his first amended complaint, plaintiff states that before being incarcerated he

9   suffered a torn patellar tendon for which he had to undergo orthroscopic surgery, following

10  which he received physical therapy and pain treatment. First Amended Complaint (FAC), pp. 1-

11  2. Upon his incarceration, plaintiff "continued to suffer chronic patellar tendonitis and pain,"

12  and at Mule Creek State Prison (MCSP) received "two courses of physical therapy (in June 2003

13  and August 2005)." Id. at 2. This therapy, which involved "the use of a Transcutaneous

14  Electronic Nerve Stimulation (TENS) unit and ice," successfully resolved plaintiff's pain

15  complaints, and the physical therapist recommended the treatment, as needed, on a continuing

16  basis as well as a lower bunk chrono. Id. Nevertheless, defendants refused to provide plaintiff

17  with additional physical therapy or a lower bunk chrono and plaintiff exhausted his available

18  administrative remedies with respect to continuing his physical therapy on May 23, 2006, when

19  his appeal MCSP 06-00137 was denied at the director's level. Id. at 2-3.

20          This lack of treatment and failure to provide a lower bunk chrono has caused

21  plaintiff to suffer substantial chronic physical pain, in violation of the Eighth Amendment, and

22  has caused his patellar tendonitis to degenerate from the stress of having to repeatedly jump

23  down from a top bunk. FAC, p. 2. In this action, seeking both money damages and injunctive

24  relief, plaintiff is proceeding against defendant Schwarzenegger, in his official capacity,[2] and

25

26          [2] As noted, defendant Schwarzenegger, originally sued in both his individual and official
    capacities, has been dismissed in his individual capacity.

1   against defendants Grannis, Sullivan, Brimhall, Akintola, and Todd, expressly in their individual

2   capacities only.  Id. at 3-5, 16.

3           Plaintiff alleges that defendant Todd, a physician's assistant, examined him on

4   February 26, 2003, examined plaintiff's knee and referred him for treatment consideration to the

5   MCSP physical therapist; however, despite plaintiff's explanation of the history of his knee

6   injury and surgery and the exacerbation of the condition caused by assignment to a top bunk, this

7   defendant "arbitrarily denied plaintiff's request for a lower bunk chrono," a failure which violates

8   CDCR policy.  FAC, pp. 7-8.  Nevertheless, per defendant Todd's referral plaintiff did receive

9   five physical therapy sessions in June of 2003.  Id. at 8.  The physical therapist, a non-defendant

10  named Schlachter, in a diagnostic report indicated that plaintiff's knee did not respond to

11  exercise but that his condition was exacerbated by exercise of increasing intensity; however,

12  plaintiff could attain up to 24 hours of relief from use of the TENS unit and ice.  Id.  Schlacter

13  recommended injections of pain medication in the knee, that plaintiff be provided a lower bunk

14  chrono and that he be considered for an orthopedic consult, which recommendations were

15  "summarily and arbitrarily denied" by an unnamed defendant on July 11, 2003.  Id. at 8-9.

16          On August 26, 2003, plaintiff again saw Physical Therapist Schlacter who

17  reported that plaintiff's knee had regressed due to a lack of physical therapy in the form of the

18  application of the TENS unit and ice.  FAC, p. 9.  On September 30, 2003, Schlacter asked that

19  plaintiff receive an ice chrono for daily treatment for 90 days and again requested that plaintiff be

20  considered for pain medication injections, but these requests were not granted.  Id.

21          On February 28, 2005, plaintiff was examined by defendant Akintola, a

22  physician's assistant at MCSP, for his knee complaints, and was referred for an orthopedic

23  consultation, which did not occur over several months and which Akintola did not follow up on.

24  FAC, pp. 9-10.  Following a July 1, 2005, examination by an unnamed MCSP physician, plaintiff

25  was referred to a physical therapist and on August 31, 2005, Schlacter examined the knee, noted

26  deterioration of the condition, and completed a "physical therapy plan of care."  Id. at 10.

4

1    Plaintiff received eight physical therapy session which included application of ice and the TENS

2    unit, and which permitted, after each session, "a near total relief from his knee pain and night

3    time discomfort." Id. at 10-11.

4         When plaintiff submitted a health care request form on January 24, 2006,

5    indicating that his continual knee pain kept him awake at night and limited his mobility but that

6    his pain could be relieved by physical therapy and access to ice and the TENS unit, his request

7    was ultimately processed as a 602 inmate appeal, and on February 9, 2006, defendant Akintola

8    examined his knee in response to the appeal, after which he partially granted the appeal by

9    referring plaintiff to the MCSP medical authorization review (MAR) committee to be considered

10   for physical therapy but "summarily and arbitrarily denied plaintiff's requests for an

11   accommodation chrono for use of the TENS unit and ice." FAC, p. 11. On March 9, 2006, the

12   MAR committee "summarily and arbitrarily denied plaintiff's request for physical therapy." Id.

13   at 12. On March 19, 2006, plaintiff appealed the denial of physical therapy to the second level,

14   which appeal was denied in April, 2006, by unnamed defendants. Id. Plaintiff alleges that

15   defendant Brimhall, MCSP Health Care Manager, failed in his duty to investigate plaintiff's

16   requests when the prison's own physical therapist had recommended certain treatment when

17   Brimhall knew that the treatment was being denied by physician assistants who were not licensed

18   to provide the specialized medical care at issue. Id. at 12-13. On April 20, 2006, plaintiff

19   appealed the denial of physical therapy to the director's level, which appeal defendants Sullivan

20   and Grannis "summarily and arbitrarily denied," despite said denial being a violation of CDCR

21   health care policies and despite their awareness of plaintiff's serious medical needs. FAC, p. 13-

22   14.

23        On January 18, 2008, plaintiff filed a document entitled "supplemental briefing

24   with exhibits to original petition," which he mis-characterizes as an "amended complaint" in his

25   opposition to the pending motion to dismiss. See Opp., p. 3. As the filing contains only

26   additional exhibits and does not incorporate the allegations of the first amended complaint, it

5

1  violates Local Rule 15-220 which requires that an amended complaint be complete in itself

2  without reference to any prior pleading.   However, the court will consider the supplemental

3  exhibits in adjudicating the pending motions to the extent any might be relevant.

4  Motion to Dismiss

5          Defendants bring their motion pursuant to non-enumerated Fed. R. Civ. P. 12(b)

6  and 12(b)(6), contending that plaintiff has not exhausted his administrative remedies and has

7  failed to state a claim upon which relief may be granted.  Motion to Dismiss (MTD), p. 1.

8          *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

9          In a motion to dismiss for failure to exhaust administrative remedies under non-

10  enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

11  raising and proving exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The

12  parties may go outside the pleadings, submitting affidavits or declarations under penalty of

13  perjury, but plaintiff must be provided with notice of his opportunity to develop a record.  Wyatt

14  v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair notice by Order,

15  filed on December 13, 2006 (and again by an Order, filed on May 11, 2007).

16          Should defendants submit declarations and/or other documentation demonstrating

17  an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

18  Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

19  complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

20  the court's attention those parts of the complaint upon which plaintiff relies.  If the court

21  determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

22  remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d at 1120.

23          *PLRA Requirements*

24          The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

25  "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

26  other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

6

1  such administrative remedies as are available are exhausted." Inmates seeking injunctive relief

2  must exhaust administrative remedies. <u>Rumbles v. Hill</u>, 182 F.3d 1064 (9th Cir. 1999). In <u>Booth</u>

3  <u>v. Churner</u>, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

4  inmates must exhaust administrative remedies, regardless of the relief offered through

5  administrative procedures. Therefore, inmates seeking money damages must also completely

6  exhaust their administrative remedies. <u>Booth v. Churner</u>, 532 U.S. 731, 121 S. Ct. 1819 (inmates

7  seeking money damages are required to exhaust administrative remedies even where the

8  grievance process does not permit awards of money damages). The United States Supreme Court

9  has held that exhaustion of administrative remedies under the PLRA requires that the prisoner

10 complete the administrative review process in accordance with the applicable procedural rules.

11 <u>Woodford v. Ngo</u>, 548 U.S. ___, 126 S. Ct. 2378 (2006). Thus, in the context of the applicable

12 PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may

13 be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's

14 grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by

15 "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the

16 requirement "by filing an untimely or otherwise procedurally defective administrative grievance

17 or appeal." <u>Woodford v. Ngo</u>, supra, 126 S. Ct. at 2382. Moreover, 42 U.S.C. § 1997e(a)

18 provides that no action shall be brought with respect to prison conditions *until* such

19 administrative remedies as are available are exhausted. <u>McKinney v. Carey</u>, 311 F.3d 1198 (9th

20 Cir. 2002).

21         *Administrative Exhaustion Procedure*

22        In order for California prisoners to exhaust administrative remedies, they must

23 proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

24 CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

25 third level appeal to the Director of the California Department of Corrections. <u>Barry v. Ratelle</u>,

26 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5). A final

1   decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

2          Defendants aver that plaintiff failed to exhaust administrative remedies with

3   regard to his request for a lower bunk chrono and that this claim should therefore be dismissed.

4   MTD, pp. 3, 5-6.  Attached as Exhibits A & B to the declaration of defendant Grannis supporting

5   the MTD, it appears that plaintiff's grievance, MCSP 06-00137, is the only inmate appeal related

6   to the claims raised in this action that reached the director's level.[3]  Both parties agree, and

7   plaintiff's own exhibit shows, this grievance was exhausted on May 23, 2006.  FAC, p. 20.  The

8   court's review indicates that the grievance, which apparently began as a "reasonable modification

9   or accommodation request CDC 1824," identifies a lack of access to therapy, specifically, to a

10  TENS unit and ice, as its basis.  FAC, p. 24, MTD; Grannis Dec., Exh. B.  No specific reference

11  was made by plaintiff to his need for a lower bunk chrono at any level of the grievance.

12         In opposition, plaintiff refers to his January, 2008, "supplemental briefing."  Opp.,

13  p. 3.  In that filing, plaintiff has included a CDC 1824 reasonable modification or

14  accommodation request, wherein plaintiff asks, inter alia, that his lower bunk/lower tier chrono

15  be renewed, which request is signed by plaintiff on October 23, 2007 (and stamped October 30,

16  2007).  Supp. Briefing, p. 5.  In his Supp. Briefing, p. 36, plaintiff includes a copy of a

17  comprehensive accommodation chrono, dated 9/26/07, showing that a temporary ground

18  floor/bottom bunk accommodation was set to expire on 10/25/07.   A November 17, 2007, first

19  level response from Sierra Conservation Center, noting plaintiff's November 6, 2007, transfer

20  from MCSP,[4] states that plaintiff's  CDC 1824 request is granted, which included granting his

21  request for a renewal of the lower bunk/lower tier chrono. Id. at 37-38.  Plaintiff contends that

22  lower bunk and lower tier chronos could be granted permanently, and that it is not enough, due to

23

24  [3]  See also, defendants's supporting declaration of E. Reyes, MCSP appeals coordinator, averring that no grievances by plaintiff were submitted at MCSP referencing denial of a request for a lower bunk and attaching plaintiff's medical/ADA/living conditions grievances.

25

26  [4]  Nevertheless, plaintiff's latest notice of change of address, filed on November 28, 2007 (#18), indicates that plaintiff is currently incarcerated at Mule Creek State Prison.

1    the severity of his chronic condition, to receive 30 and 90-day chronos.  Opp., p. 3.

2            As defendants note in their reply, the October 23, 2007, request was filed long

3    after this action was initiated, on October 3, 2006, as stamped by the Northern District Court

4    Clerk.   Reply, pp. 2-3.  As noted above, plaintiff must administratively exhaust any claim with

5    regard to prison conditions before bringing a civil rights action in federal court.  McKinney v.

6    Carey, supra, 311 F.3d 1198.  Defendants are correct that plaintiff's claim with reference to

7    defendants' failure to grant a lower bunk/lower tier chrono is not administratively exhausted.

8    This claim should be dismissed.  Moreover, as defendants aver, defendant Todd should be

9    dismissed because plaintiff has implicated this defendant only for his alleged denial of plaintiff's

10   request for a lower bunk chrono.  MTD, p. 3, Reply, p. 3.  Thus, the court will recommend

11   dismissal of both the lower bunk/lower tier claim and defendant Todd from this action.

12            *Legal Standard for 12(b)(6) Motion to Dismiss*

13            In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

14   a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

15   it must contain factual allegations sufficient to "raise a right to relief above the speculative

16   level."  Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007).  "The pleading

17   must contain something more...than...a statement of facts that merely creates a suspicion [of] a

18   legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and

19   Procedure § 1216, pp. 235-236 (3d ed. 2004).

20            In considering a motion to dismiss, the court must accept as true the allegations of

21   the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

22   Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

23   motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

24   89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

25   that general allegations embrace those specific facts that are necessary to support the claim.'"

26   National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

                                                9

1 | (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

2 | Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

3 | Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

4 |      The court may consider facts established by exhibits attached to the complaint.

5 | Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also

6 | consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

7 | 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

8 | papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

9 | 1986). The court need not accept legal conclusions "cast in the form of factual allegations."

10 | Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

11 |      A pro se litigant is entitled to notice of the deficiencies in the complaint and an

12 | opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See

13 | Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

14 |      Defendants contend that defendants Schwarzenegger, Grannis, Sullivan and

15 | Brimhall, are all being sued in their individual capacities and that therefore there must be an

16 | actual link between the actions of the defendants and the deprivation plaintiff alleges that he has

17 | suffered. MTD, p. 6. As this case now proceeds against defendant Schwarzenegger in his

18 | official capacity only, however, the court will address this argument only as to defendants

19 | Grannis, Sullivan and Brimhall.

20 |      Plaintiff alleges in his first amended complaint that defendant Grannis, in her

21 | capacity as Chief of Inmate Appeals, "is responsible for supervising the investigation of all

22 | inmate appeals submitted for 'director's level review.'" FAC, p. 4. He contends that defendant

23 | Sullivan, CDCR "Appeals Examiner and/or Staff Services Manager.... is responsible for

24 | investigating and responding to all inmate appeals submitted for 'director's level review.' Id.

25 | Plaintiff claims that defendant Brimhall, MCSP Health Care Manager, "is responsible for the

26 | health care of all MCSP inmates....[whose] duties include...supervising, directing, and/or training

1  the MCSP medical staff in the delivery of health care services and the management of [] health

2  care program, involvement in the determination of proper medical care for inmates, authorizing

3  and approving medical testing and treatments, and responding to inmate appeals related to health

4  care issues." Id.  Plaintiff expressly states as to each of these defendants that they are sued in

5  their individual capacities.

6          Defendants are correct in noting that supervisory personnel are not generally liable

7  under § 1983.  MTD, p. 7.  The Civil Rights Act under which this action was filed provides as

8  follows:

9          Every person who, under color of [state law] . . . subjects, or causes
           to be subjected, any citizen of the United States . . . to the
10         deprivation of any rights, privileges, or immunities secured by the
           Constitution . . . shall be liable to the party injured in an action at
11         law, suit in equity, or other proper proceeding for redress.

12  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

13  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

14  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

15  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

16  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

17  omits to perform an act which he is legally required to do that causes the deprivation of which

18  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

19         Moreover, supervisory personnel are generally not liable under § 1983 for the

20  actions of their employees under a theory of respondeat superior and, therefore, when a named

21  defendant holds a supervisorial position, the causal link between him and the claimed

22  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

23  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S.

24  941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel

25  in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

26  Cir. 1982).  Thus, as plaintiff sues defendants Grannis, Sullivan and Brimhall in their individual

11

1  capacities, to the extent that he seeks to implicate them for the supervisory roles, they must be

2  dismissed.

3        Further, defendants note that these defendants are sued for denying plaintiff's

4  appeals.  MTD, pp. 9-10.  In this court's dismissal of the original complaint, the undersigned set

5  forth, in relevant part, the following:

> With regard to defendants Grannis, Sullivan, and his claims against
> ....Brimhall, arising from their participation in the inmate appeals
> process, all of whom plaintiff sues only in their individual
> capacities, the gravamen against these individuals appears to be
> their failure to investigate the inmate appeals he filed with regard
> to his expressed need for physical therapy for chronic patellar
> tendonitis and for a lower bunk,[5] or to respond to the grievances in
> a manner plaintiff deemed appropriate.  Prisoners do not have a
> "separate constitutional entitlement to a specific prison grievance
> procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.
> 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).
> Even the non-existence of, or the failure of prison officials to
> properly implement, an administrative appeals process within the
> prison system does not raise constitutional concerns.  Mann v.
> Adams, 855 F.2d 639, 640 (9th Cir. 1988).  See also, Buckley v.
> Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d
> 728 (8th Cir. 1991).  Azeez v. DeRobertis, 568 F. Supp. 8, 10
> (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural
> right only, it does not confer any substantive right upon the
> inmates.  Hence, it does not give rise to a protected liberty interest
> requiring the procedural protections envisioned by the fourteenth
> amendment").  Specifically, a failure to process a grievance does
> not state a constitutional violation.  Buckley, supra.  State
> regulations give rise to a liberty interest protected by the Due
> Process Clause of the federal constitution only if those regulations
> pertain to "freedom from restraint" that "imposes atypical and
> significant hardship on the inmate in relation to the ordinary
> incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484, 115
> S. Ct. 2293, 2300 (1995).[6]  Plaintiff's due process claims against

_____

[5]  It is not clear that plaintiff actually filed a grievance that reached any of these defendants with regard to his request for a lower bunk.

[6]  "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  See also Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes

these defendants will be dismissed but plaintiff will be granted leave to amend.

Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989). "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v. Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980). "Without proximate cause, there is no § 1983 liability." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

> The search, which was performed in accordance
> with this constitutionally valid strip search policy,
> was subsequently ratified by the School Board when
> Mr. Williams filed a grievance. Therefore,
> Williams' only grasp at evoking municipal
> liability under § 1983 is to show that this
> subsequent ratification is sufficient to establish the
> necessary causation requirements. Based on the
> facts, the Board believed Ellington and his
> colleagues were justified in conducting the search of
> Williams. There was no history that the policy had
> been repeatedly or even sporadically misapplied by
> school board officials in the past. Consequently, the
> School Board cannot be held liable for the
> ratification of the search in question, because this
> single, isolated decision can hardly constitute the
> "moving force" behind the alleged constitutional
> deprivation.

Williams v. Ellington, 936 F.2d 881, 884-885 (9th Cir. 1991).

This court is unwilling to adopt a rule that anyone involved in adjudicating grievances after the fact is per se potentially liable under a ratification theory. However, this is not to say that persons involved in adjudicating administrative disputes, or persons to whom complaints are sometimes made can never be liable under a ratification theory. If, for example, a reviewing official's rejections of administrative grievances can be construed as an automatic whitewash, which may have led other prison officials to have no

---

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

13

1    concern of ever being reprimanded, a ratifying official may be
     liable for having put a defective policy in place.
2
     In this instance, plaintiff alleges that defendant Brimhall denied
3    plaintiff's request for physical therapy for his patellar tendonitis on
     two dates in April, 2006, and that defendants Sullivan and Grannis
4    denied his request for physical therapy on May 23, 2006.  Cmp.,
     pp. 19...   Plaintiff has not set forth facts with regard to any of these
5    defendants sufficient to suggest that they are liable to him under a
     ratification theory, and they will be dismissed on that ground as
6    well, but plaintiff will be given leave to amend.

7    Order, filed on 4/10/07, pp. 5-7.

8         Plaintiff has alleged in his first amended complaint that defendant Brimhall,

9    MCSP Health Care Manager, failed in his duty to investigate plaintiff's requests when the

10   prison's own physical therapist had recommended certain treatment and Brimhall knew that the

11   treatment was being denied by physician assistants who were not licensed to provide the

12   specialized medical care at issue.  FAC, pp. 12-13.  The court's review of the second level appeal

13   denial of plaintiff's request for access to therapy with a TENS unit and ice when needed, signed

14   by defendant Brimhall, and dated April 11, 2006, FAC, pp. 26-27, indicates that this defendant

15   relied on the medical authorization and review (MAR) committee's denial of plaintiff's request

16   for a TENS unit and ice chrono.  FAC, p. 26.  On the face of it, this denial appears to lack logic:

17        On 3/9/06 the medical authorization and review (MAR) committee
          denied your request for physical therapy.  This request was denied
18        as the committee did not feel that your chronic knee pain could not
          be helped by physical therapy.
19

20   Id.

21        The statement is inconsistent at best: the request for physical therapy was denied

22   because the committee felt that plaintiff's (admittedly) chronic knee pain could actually be

23   helped by physical therapy?  This is the meaning of the second sentence once the self-nullifying

24   negatives are removed.  Nevertheless the denial of the appeal states tersely: "There is no

25   indication as stated above for a tens unit, ice chrono, or physical therapy at this time."  Id.  While

26   it is possible, even likely, that defendant simply made a typographical error in the insertion of the

14

second "not" in the second sentence of the excerpt above, the fact that defendant concedes that plaintiff suffers "chronic knee pain" does not make clear a coherent and legitimate basis for the appeal denial and, in his capacity as MCSP "Health Care Manager," the court finds that plaintiff has made a colorable claim as to this defendant in his individual capacity.  No lay person could justifiably rely on such a contradictory notation.

As to defendants Grannis and Sullivan, whom plaintiff seeks to implicate for a putatively summary and arbitrary denial of his director's level appeal of the denial of his request for physical therapy at the second level, the undersigned notes the second level decision, reported therein, is rephrased, without explanation, to state that it was found at the second level that: "The committee did not feel that the appellant's chronic knee pain could be helped by PT."  FAC, p. 20.

In the third level appeal denial, it was stated that:

> The appellant must realize that medical diagnosis and treatment recommendations may vary between facilities, specialists, and physicians throughout the CDCR.  The physical therapist the appellant saw had a recommendation for treatment, however, the physicians at MCSP shall determine the type of treatment and medications that the appellant will receive.  The institution shall only provide medical services for inmates which are based on medical necessity and supported by outcome data as effective medical care.  The appellant is advised that each practitioner determines, at the time of treatment, the extent of treatment for the health care problem.  The appellant has not provided a compelling argument to warrant modification of the decision reached by the institution.

FAC, p. 20.

Defendants cite persuasive authority to make the point that non-medical prison officials may justifiably rely on prison physicians' opinions because failing to do so would require an administrator to make medical judgments.  Opp., p. 10, citing Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005); Hernandez v. Keane, 341 F.3d 137, 148 (2nd Cir. 2003); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  In Greeno v. Daley, 414 F.3d at  655-657, the Seventh Circuit noted that, when the plaintiff accused non-medical appeals examiners of deliberate

1  indifference to his medical needs for failing to investigate "or remedy the medical defendants'

2  failure to provide appropriate treatment," precisely plaintiff's claim here, the appellate court did

3  not think a failure to take further action could constitute deliberate indifference because there

4  was evidence that one of the individuals had investigated the complaints and "relied on the

5  assurances of medical staff that [plaintiff] was receiving treatment."  As to the other non-medical

6  appeal reviewer, the court found nothing in the record to indicate that that defendant had "shirked

7  his duty in any way or failed to appropriately handle the claims."  Id. at 657.  In Hernandez,

8  supra, 341 F.3d at 148, a defendant involved in the appeal process was not found to have been

9  personally responsible for a constitutional violation at least in part because the underlying actions

10  or omissions did not constitute Eighth Amendment violations.   In Durmer, supra, 991 F.2d at 66

11  & n.2, 69, summary judgment was found appropriate for two defendants, a warden and a

12  corrections commissioner, who had failed to respond to letters plaintiff had sent about a lack of

13  physical therapy because neither of them was a doctor and could not be found deliberately

14  indifferent to an inmate being treated by a physician.  Defendants Grannis and Sullivan should be

15  dismissed with leave to amend.   Plaintiff is cautioned, should he file a second amended

16  complaint, to incorporate all of his claims, including those found colorable herein (see below),

17  within that pleading.  Local Rule 15-220 requires that an amended complaint be complete in

18  itself without reference to any prior pleading.

19          As to defendant Akintola, defendants reduce plaintiff's claim as to this individual

20  to a claim that, on appeal, Akintola denied plaintiff access to a TENS unit and ice.  MTD, p. 11.

21  However, plaintiff also alleged a failure by Akintola, a physician's assistant at MCSP, following

22  a February 28, 2005, examination Akintola conducted; that is, after referring plaintiff for an

23  orthopedic consultation following his examination, which did not occur over several months,

24  Akintola did not follow up on the referral.  FAC, pp. 9-10.  In fact, according to plaintiff it was

25  only following a July 1, 2005, examination by an unnamed MCSP physician, that plaintiff was

26  referred to a physical therapist on August 31, 2005.  Id. at 10.

1    Defendants note that plaintiff stated that defendant Akintola's opinion denying the

2    TENS unit and ice to plaintiff was reviewed and approved three times: once by the MCSP Chief

3    Physician and Surgeon, once by the MAR committee, and once by the defendant Health Care

4    Manager (Brimhall).  MTD, p. 12, citing FAC at 11-12.  On that basis, defendants seek to pose

5    plaintiff's claim as simply a difference of opinion as to the appropriate treatment for his

6    condition.  However, whether or not others signed off on defendant Akintola's denial does not

7    signify that plaintiff has not stated a colorable Eighth Amendment claim as to this defendant

8    (whether or not plaintiff has alleged an Eighth Amendment violation as to each of them).  The

9    motion to dismiss should be denied as to defendant Akintola.

10                    _Legal Standard for Eighth Amendment Claim_

11    In order to state a § 1983 claim for violation of the Eighth Amendment based on

12    inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

13    deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

14    285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

15    serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

16    501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

17    1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

18    Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

19    A serious medical need exists if the failure to treat a prisoner's condition could

20    result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

21    that a prisoner has a serious need for medical treatment are the following:  the existence of an

22    injury that a reasonable doctor or patient would find important and worthy of comment or

23    treatment; the presence of a medical condition that significantly affects an individual's daily

24    activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

25    F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

26    (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

17

1    grounds, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

2          In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

3    defined a very strict standard which a plaintiff must meet in order to establish "deliberate

4    indifference."  Of course, negligence is insufficient.  <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. at 1978.

5    However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

6    which is so obvious that it should be known) is insufficient.  <u>Id.</u> at 836-37, 114 S. Ct. at 1979.

7    Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

8    should have known of the risk.  <u>Id.</u> at 842, 114 S. Ct. at 1981.

9          It is nothing less than recklessness in the criminal sense – subjective standard –

10   disregard of a risk of harm of which the actor is <u>actually</u> aware.  <u>Id.</u> at 838-842, 114 S. Ct. at

11   1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

12   that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u> at 837,

13   114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

14   of serious harm and disregards that risk by failing to take reasonable measures to abate it."  <u>Id.</u> at

15   847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

16   knowledge of a substantial risk of serious harm."  <u>Id.</u> at 842, 114 S. Ct. at 1981.  If the risk was

17   obvious, the trier of fact may infer that a defendant knew of the risk.  <u>Id.</u> at 840-42, 114 S. Ct. at

18   1981.  However, obviousness <u>per se</u> will not impart knowledge as a matter of law.

19         Also significant to the analysis is the well established principle that mere

20   differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

21   Amendment violation.  <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996); <u>Franklin v. Oregon</u>,

22   662 F.2d 1337, 1344 (9th Cir. 1981).

23         Moreover, a physician need not fail to treat an inmate altogether in order to violate

24   that inmate's Eighth Amendment rights.  <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir.

25   1989).  A failure to <u>competently</u> treat a serious medical condition, even if some treatment is

26   prescribed, may constitute deliberate indifference in a particular case.  <u>Id.</u>

1        Additionally, mere delay in medical treatment without more is insufficient to state

2  a claim of deliberate medical indifference.  <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766

3  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

4  no requirement that the delay cause "substantial" harm.  <u>McGuckin</u>, 974 F.2d at 1060, citing

5  <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-

6  1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

7  to provide additional support for a claim of deliberate indifference; however, it does not end the

8  inquiry.  <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

9  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

10  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

11  the defendant."  <u>McGuckin</u>, 974 F.2d at 1061.

12        Notwithstanding defendants' argument, this court is unable to determine on this

13  motion to dismiss (MTD, pp. 11-14) that plaintiff's claims against defendant Akintola regarding

14  the alleged delay and lack of appropriate therapy for his chronic knee condition could not amount

15  to deliberate difference to a serious medical need and constitute nothing more than a difference

16  of opinion.   Defendants' motion to dismiss this defendant should not be granted.

17        Defendants concede that plaintiff has serious medical needs in contending that

18  plaintiff may not seek injunctive relief for his medical needs because, as a state prisoner with

19  serious medical needs, he is an individual embraced within the class action, <u>Plata v.</u>

20  <u>Schwarzenegger</u>, No. C-01-1351, an action adjudicated in the Northern District of California.

21  MTD, p. 14.  Defendants argue that all state prisoners with serious medical needs are <u>Plata</u> class

22  members and that plaintiff's injunctive relief claims are covered by <u>Plata</u> remedial plans.  Id.

23      *Plata v. Schwarzenegger*, United States Northern District Court
Action No. C-01-1351 (*Plata*), was brought on behalf of California

24      state prisoners who have serious medical needs.  (Ex. A, 1:23.) The
plaintiffs sued state officials responsible of the operation of the

25      CDCR and its health care delivery system. (Ex. A, 1:23-27.) The
action dealt with the plaintiffs' allegations that they were not

26      receiving constitutionally adequate medical care as required by the

> Eighth Amendment, and that the defendants were not complying with the ADA. (Ex. A, 2:1-4.)  Under the terms of the Stipulation for Injunctive Relief binding the parties, the defendants agreed to make reasonable efforts to secure the funding necessary to implement policies and procedures designed to meet the minimum level of medical care necessary to fulfill their obligations to the plaintiffs under the Eighth Amendment. (Ex. A, 2:27-3:2.)

MTD, p. 14.

Defendants maintain that individual class members are barred from pursuing individual lawsuits seeking equitable relief that is within the subject matter of the class action. Id., citing Gillespie v. Crawford, 858 F.2d 1101, 1102-03 (5th Cir. 1988); McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991).

The undersigned has elsewhere noted in the context of a different class action:

> A plaintiff who is a member of a class action for equitable relief from prison conditions may not maintain a separate, individual suit for equitable relief within the same subject matter of the class action. Gillespie v. Crawford, 858 F.2d 1101, 1103 (5th Cir.1988) (en banc) (adopting a rule "similar to that of the Sixth and Eighth Circuits," precluding individual lawsuits for equitable relief by class action members, averring that such actions "would interfere with the orderly administration of the class action and risk inconsistent adjudications") FN2[7]; see also, McNeil v. Guthrie, 945 F.2d 1163, 1165-1166 (10th Cir.1991) (precluding individual lawsuits for injunctive relief alleging unconstitutional prison conditions when there is an existing class action) FN3;[8] Rouser v. White, No. CIV S-93-0767 LKK GGH P, 2006 WL 1897125, at *2 (E.D.Cal.2006).

Stringham v. Lee, 2007 WL 2559284 * 1 (E.D. Cal. 2007).

\\\\\

\\\\\

---

[7] FN2. The Gillespie Court found that individual class members could pursue equitable relief claims "by urging further action through the class representative and attorney, including contempt proceedings, or by intervention in the class action." Id.

[8] FN3. The Tenth Circuit notes two exceptions to the prohibition of individual lawsuits by class members where there is a class action: 1) where the individual seeks equitable relief for claims not litigated withing the class action's boundaries; and 2) where money damages are sought.  Id., at 1166 n. 4.

20

1    This court takes judicial notice[9] of the <u>Plata</u> "Stipulation for Injunctive Relief."

2  Exhibit A to MTD.  Within the stipulation, the gravamen of the class action is that plaintiffs,

3  California state prisoners with serious medical needs, "are not receiving constitutionally adequate

4  medical care as required by the Eighth Amendment to the U.S. Constitution and that defendants

5  are not complying with the Americans with Disabilities Act (ADA) and § 504 of the

6  Rehabilitation Act."  Id. at 3.[10]   The stipulation sets forth among its "Terms and Conditions" that

7  the CDC was to implement Health Care Services Divisions policies and procedures as of

8  February 2002 "designed to meet or exceed the minimum level of care necessary to fulfill the

9  defendants' obligation to plaintiffs under the Eighth Amendment...."  Id. at 3-4.  Any disputes as

10  to the adequacy of the policies and procedures are to be resolved pursuant to the dispute

11  resolution procedures set forth in the stipulation.  Id. at 4.  The agreement sets forth that the court

12  may grant injunctive relief should the parties fail to resolve disputes as to the policies and

13  procedures.  Id. at 14-15.  The stipulation states that: "The Court shall have the power to enforce

14  the Stipulation through specific performance and all other remedies permitted by law."  Id. at 15.

15    Paragraph 7 of the <u>Plata</u> Stipulation states:

16    The parties understand and agree that the 602/inmate-grievance
      procedure is an integral part of the provision of essential medical
17    care and is integrated into the Policies and Procedures.
      Accordingly, the parties agree that, in the first instance, all
18    complaints regarding medical care to an individual inmate, except
      those requiring urgent medical care, shall be submitted to
19    defendants after utilizing the inmate grievance procedure.  If after
      the appeal has reached the third director's level of review and all
20    administrative relief has been exhausted, or the CDC has not
      responded to the inmate's appeal within 30 days at the Director's
21    level of review and plaintiffs contend that the grievance process
      has failed to adequately address the problem, plaintiffs may bring
22    the medical care concern to the attention of defense counsel, who
      shall respond in writing within 30 days.  Plaintiffs' counsel may
23    also contact the Chief Medical Officers at the institutions to inquire

24

25    [9] Judicial notice may be taken of court records.  <u>Valerio v. Boise Cascade Corp.</u>, 80 F.R.D.
      626, 635 n.1 (N.D. Cal. 1978), <u>aff'd</u>, 645 F.2d 699 (9th Cir.), <u>cert. denied</u>, 454 U.S. 1126 (1981).

26    [10] This references the court's electronic pagination.

21

1    about the care furnished to particular inmates on a monthly basis.
     Defendants' counsel shall be notified about such contacts.
2    Id. at 5-6.

3          Paragraph 30 makes clear that avenue for plaintiffs should they believe defendants

4    are not acting in accordance with the stipulation and the policies and procedures arising from the

5    agreement. Id. at 15-16.  Paragraphs 5 and 8 make clear that inmates with serious medical

6    conditions within the facility where plaintiff is housed is covered by Plata.  Id. at 4, 6.

7          Plaintiff does not deny his membership in the Plata plaintiff class.  Instead, he

8    focuses on what he terms the use of the permissive "may," rather than the mandatory "shall" in

9    portions of ¶ 7 of the stipulation, set forth above, i.e.:

10         plaintiffs may bring the medical care concern to the attention of
           defense counsel ....[and] [p]laintiffs' counsel may also contact the
11         Chief Medical Officers at the institutions to inquire about the care
           furnished to particular inmates on a monthly basis.
12

13   Opp., p. 10.

14         He parenthetically notes the exception for urgent medical care (in ¶ 7) but fails to

15   develop that argument.  Id. at 11.  Plaintiff also quotes from (Opp., 11) the "Enforcement"

16   section of the stipulation (at ¶ 29) wherein the following is stated:

17         Neither the fact of this stipulation nor any statements contained
           herein may be used in any other case or administrative proceeding,
18         except defendants, CDC, or employees thereof reserve the right to
           use this Stipulation and the language herein to assert issue
19         preclusion and res judicata in other litigation seeking class or
           systemic relief.  When these legal defenses are raised, defendants
20         will send copies of such complaints to plaintiffs' counsel at the
           Prison Law Office.
21

22   Exh. A, p. 15, to MTD.

23         Plaintiff maintains that nothing therein precludes individual lawsuits.  Opp., p. 11.

24   Plaintiff is correct to the degree that he seeks money damages against defendants sued

25   individually; however, he is precluded, as a member of the Plata class from seeking injunctive

26   relief in an individual action.  Gillespie v. Crawford, supra, 858 F.2d at 1103; McNeil v.

1    Guthrie, supra, 945 F.2d at 1165-1166 .

2           Plaintiff's claims against defendant Schwarzenegger, in his official capacity, must

3    also be dismissed, as the court has found that plaintiff may not proceed on his claims for

4    injunctive relief.

5    Motion for a TRO/Preliminary Injunction

6           As the court has determined that plaintiff, a Plata class member may not proceed

7    on his injunctive relief claims, the court may no longer address plaintiff's motion for a

8    TRO/preliminary injunction regarding the treatment of his chronic patellar tendonitis and knee

9    pain.  As plaintiff should be precluded from proceeding on his claims for permanent injunctive

10   relief, the undersigned could not find that plaintiff might be entitled to any form of preliminary

11   injunctive relief.

12          Accordingly, IT IS HEREBY ORDERED that:

13        1.  Plaintiff's April 29, 2008 (# 34) defective motion for leave to amend is denied;

14        2.  Plaintiff's April 29, 2008 (# 34) request to vacate his motion for a

15   TRO/preliminary injunction, filed on February 11, 2008 (# 24), is denied as moot.

16        IT IS RECOMMENDED that:

17        1.  Defendants' January 18, 2008 (# 21), motion to dismiss be granted in part and

18   denied in part:

19          a. granted as to the allegations regarding the denial of a request for a lower

20   bunk/lower tier chrono and as to defendant Todd and this claim and defendant be dismissed from

21   this action;

22          b. granted as to defendant Schwarzenegger in his official capacity and this

23   defendant be dismissed from this action;

24          c. granted as to plaintiff's claims for prospective injunctive relief and this action

25   proceed only as to plaintiff's claims for money damages against the remaining defendants;

26   \\\\\

1            d. granted as to defendants Grannis and Sullivan with leave to amend within

2  twenty days of adoption of these findings and recommendations, should that occur;

3            e. denied as to plaintiff's claims of inadequate medical care in violation of the

4  Eighth Amendment as to defendant Brimhall and Akintola in their individual capacities.

5            2. Plaintiff's motion for a TRO/preliminary injunctive relief, filed on February

6  11, 2008 (# 24), be denied.

7            These findings and recommendations are submitted to the United States District

8  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

9  days after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties. Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

12  shall be served and filed within ten days after service of the objections. The parties are advised

13  that failure to file objections within the specified time may waive the right to appeal the District

14  Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

15  DATED: 05/23/08

16                           /s/ Gregory G. Hollows

17                           GREGORY G. HOLLOWS
                              UNITED STATES MAGISTRATE JUDGE

18  GGH:009
     meye2584.ofr

19

20

21

22

23

24

25

26