IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN RUSSELL MEYER,

    Plaintiff,                      No. CIV S-06-2584 LKK GGH P

    vs.

ARNOLD SCHWARZENEGGER, et al.,

                                    ORDER &amp;
    Defendants,                FINDINGS AND RECOMMENDATIONS

_____/

I. <u>Introduction</u>

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are defendants' motion for summary judgment filed on September 11, 2009. Doc. 80. Plaintiff filed an opposition on October 1, 2009 and defendants filed a reply on October 8, 2009. Also pending are plaintiff's motion to submit documents and surreply (Doc. 83), defendants' motion to strike the surreply (Doc. 85), plaintiff's motion for judicial notice (Doc. 89) and plaintiff's motion to amend the complaint (Doc. 90).

        Plaintiff's motion to file a surreply will be granted and the undersigned will review these exhibits, but after carefully reviewing the record it is recommended that defendants' motion for summary judgment be granted and this case closed.

\\\\\

II. Complaint

This case is proceeding on the first amended complaint (FAC), filed on May 9, 2007. Plaintiff states that prior to his incarceration he suffered a torn patellar tendon in his knee for which he had to undergo arthroscopic surgery, following which he received physical therapy and pain treatment. FAC at 1-2. Upon his incarceration, plaintiff "continued to suffer chronic patellar tendonitis and pain," and at Mule Creek State Prison (MCSP) received "two courses of physical therapy (in June 2003 and August 2005)." Id. at 2. This therapy, which involved "the use of a Transcutaneous Electronic Nerve Stimulation (TENS) unit and ice," successfully resolved plaintiff's pain complaints, and the physical therapist recommended the treatment, as needed, on a continuing basis. Id. Nevertheless, defendants refused to provide plaintiff with additional physical therapy, the TENS unit or ice. Id. at 2-3.[1]

Plaintiff alleges this lack of treatment caused him to suffer substantial chronic physical pain, in violation of the Eighth Amendment, and has caused his patellar tendonitis to degenerate. In this action, plaintiff now seeks money damages against defendants Brimhall and Akintola.[2]

Plaintiff submitted a health care request appeal on January 24, 2006, indicating that his continual knee pain kept him awake at night and limited his mobility but that his pain could be relieved by physical therapy and access to ice and the TENS unit. On February 9, 2006, defendant Akintola saw plaintiff in response to the appeal, after which he partially granted the appeal by referring plaintiff to the MCSP medical authorization review (MAR) committee to be considered for physical therapy but "summarily and arbitrarily denied plaintiff's requests for an accommodation chrono for use of the TENS unit and ice." FAC at 11. On March 9, 2006, the

---

[1] Plaintiff's claim against defendant Todd for failing to provide a lower bunk chrono was previously dismissed by the court.

[2] Plaintiff dismissed a claim against Akintola concerning a February 28, 2005, referral made by that defendant. Doc. 76.

1   MAR committee "summarily and arbitrarily denied plaintiff's request for physical therapy." Id.
2   at 12.
3      Plaintiff alleges that defendant Brimhall, MCSP Health Care Manager, failed in
4   his duty to investigate plaintiff's requests when the prison's own physical therapist had
5   recommended certain treatment when Brimhall knew that the treatment was being denied. Id. at
6   12-13.

III. Motion for Summary Judgment

   Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at

1  2553.

2        If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

        In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

        In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct.

at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

Undisputed Facts

The following of defendants' undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed:

Prior to Incarceration

Plaintiff developed chronic knee pain in 1995 due to his work in construction and further injured his left knee on August 14, 1996.  DUF #2, 3.  Plaintiff was seen by Dr. Sweeney, an orthopedic specialist, who diagnosed a torn patellar tendon.  DUF #4.  On January 8, 1997, Dr. Sweeney performed diagnostic arthroscopy and arthromy repair on plaintiff's torn patellar tendon.  DUF #5.  Plaintiff was seen by Dr. Sweeney until February 1999.  DUF #6.  Dr. Sweeney's final report stated: "There is residual chronic thickening over the patellar tendon" (DUF #7; Doc. 24 at 39) and "Today, [plaintiff] has only minimal complaints and continues to work as a pool cleaner with no complaints of increased symptoms with his activities.  It is my opinion that he had maximized medical care at that time and no further active care is needed at this time."  DUF #8; Doc. 24 at 38.

Post Incarceration

Plaintiff was incarcerated in April 2000.  DUF #9.  Defendant Atkinola was a physician's assistant.  MSJ, Atkinola Decl. ¶ 1.  Defendant Brimhall was a Health Care Manager, who is not a physician and does not diagnose illnesses or prescribe medical treatments.  DUF

1  #20.

2         A physician's assistant examined plaintiff on February 26, 2003 for left knee pain
3  and recommended exercise and weight loss and referred plaintiff for a consultation with a
4  physical therapist to assist with exercise of his patellar tendon. DUF #10.

5         Plaintiff's knee was x-rayed on March 3, 2003, and the doctor noted "other than a
6  bi-partite patella, I see no abnormalities." DUF #11. In June 2003, plaintiff received 5 physical
7  therapy sessions with a registered physical therapist which included use of a TENS unit and ice.
8  DUF #12.

9         Plaintiff was examined by a physician's assistant on February 28, 2005. FAC at
10 9. Plaintiff was treated by a doctor on July 1, 2005. Id. at 10. Plaintiff had 8 more physical
11 therapy session with a registered physical therapist in August 2005 which also included a TENS
12 unit and ice. DUF #13. Plaintiff's symptoms lessened a great deal, but then returned a few
13 months later. FAC at 11.

14        In January 2006, plaintiff filed an inmate appeal requesting access to physical
15 therapy, a yearly check-up with a therapist and to have his own TENS unit and ice to do his own
16 therapy. DUF #14. On February 9, 2006, defendant Atkinola interviewed plaintiff regarding the
17 appeal. Atkinola denied the request for ice and a TENS unit because he did not think plaintiff
18 should be using those items without the supervision of a physical therapist. DUF #16. Atkinola
19 referred the physical therapy request to the MAR committee so if physical therapy was granted
20 the therapist could use a TENS unit and ice if appropriate. Id.

21        The MAR committee met on March 9, 2006, to consider plaintiff's request. DUF
22 #17. The committee consisted of five doctors, a registered nurse, an occupational therapist and
23 two physician's assistants, one of whom was defendant Atkinola. Id. Atkinola advocated for
24 plaintiff to receive physical therapy but the committee denied the request as not medically
25 indicated. Id.

26 \\\\\

1    Defendant Brimhall denied plaintiff's further appeal based on the MAR
2 committee's findings. DUF #21. Brimhall relied on the recommendations of the MAR
3 committee as he is not a physician. DUF #20.
4    On December 5, 2007, a doctor examined plaintiff who was complaining of knee
5 pain. DUF #22. The doctor noted that plaintiff had no knee deformity and no instability in the
6 knee joint. Id. Because plaintiff indicated tenderness, the doctor requested an MRI to rule out a
7 recurrence of a torn patellar tendon and issued a temporary lower bunk chrono. Id.
8    The MRI occurred on January 25, 2008 and the doctor ruled out a torn patellar
9 tendon. DUF #23. The doctor found the knee to be normal in all important respects. Id. The
10 doctor did find mild quadriceps tendiopathy, which he determined to be scar tissue that formed
11 after the 1997 surgical repair. Id. The doctor did not believe a TENS unit to be appropriate,
12 rather stretching, strengthening exercises and weight loss would be more effective. DUF #24;
13 MSJ, Dr. Nasser Decl. ¶ 14. The doctor also requested a consultation and examination by an
14 orthopedic specialist to determine if a referral to physical therapy was appropriate. DUF #25.
15    On June 5, 2008, plaintiff met with Dr. Lovett, a board certified orthopedic
16 specialist who found that the knee problems were not serious. DUF #26, 27, 28. Dr. Lovett
17 found that the knee revealed a full range of motion 1-125 degree, there was no crepitus and the x-
18 ray and MRI showed no evidence of tears in the patellar tendon or any serious pathology. DUF
19 #28. Dr. Lovett found that re-injury was not likely and infapatellar tendonosis was indicated but
20 not acute. Id. Based on objective findings alone Dr. Lovett would have prescribed anti-
21 inflammatories, weight loss, mild exercise and stretching. DUF #29. Yet, due to plaintiff's
22 subjective complaints of chronic pain and the MRI finding of some infapatellar tendonosis, Dr.
23 Lovett felt that plaintiff could benefit by arthoscopy and debridement of the patellar tendon.
24 DUF #30.
25    On August 6, 2008, plaintiff underwent arthroscopy surgery at Mark Twain St.
26 Joseph's Hospital by Dr. Lovett. DUF #31. Dr. Lovett concluded that further physical therapy or

treatment by a TENS unit or ice was not medically indicated and potentially harmful for plaintiff. DUF #32. Dr. Lovett would not recommend plaintiff have unlimited and unsupervised access to a TENS unit or ice because these can be harmful if overused. DUF #33.

Disputed Facts

Plaintiff does not dispute the facts set forth by defendants, rather plaintiff contends that the lack of physical therapy and access to a TENS unit and ice violated the Eighth Amendment.

Eighth Amendment Claim

Legal Standard

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state

9

a claim of deliberate medical indifference. <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. <u>McGuckin</u>, 974 F.2d at 1060, citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." <u>McGuckin</u>, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. <u>Hutchinson v. United States</u>, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for defendants. The dispositive question on this summary judgment motion is ultimately <u>not</u> what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

<u>Analysis</u>

For purposes of this motion, the court finds that plaintiff's condition and the ongoing treatment for his knee is properly characterized as a serious medical condition under the Eighth Amendment. Plaintiff's injury significantly affects his daily activities and a reasonable doctor would find his injury worthy of treatment.

The undersigned's May 27, 2008, findings and recommendations based on

defendants' motion to dismiss stated that it was possible Akintola could be liable for denying plaintiff the TENS unit and ice. Those findings also noted it was possible Brimhall could be liable for denying the appeal, when the MAR decision stated that plaintiff's suffered chronic knee pain, but denied any treatment. However, the instant motion for summary judgment contains much additional information that will be discussed below which sheds light on the decisions made by these defendants that was not readily apparent from the evidence available in the motion to dismiss.

The undisputed facts also reveal that after December 5, 2007, plaintiff received a great deal of medical care including surgery. However, plaintiff filed the operative complaint on May 9, 2007, prior to receiving this high level care. The question remains if defendants were deliberately indifferent to plaintiff's serious medical needs in the time in question in 2006 and 2007.

<u>Brimhall</u>

Defendant Brimhall denied plaintiff's appeal that sought additional physical therapy, TENS treatment and ice. Brimhall, who is not a physician, based his decision on the MAR committee's medical findings. Plaintiff argues that Brimhall should have investigated the appeal and ultimately approved it.

Defendants have presented persuasive evidence from non-defendant Dr. Lovett, an orthopedic physician and surgeon who treated plaintiff and performed his knee surgery. Dr. Lovett described his reservations about physical therapy, the TENS unit and ice:

> Further physical therapy, a TENS unit or ice was not medically indicated in [plaintiff's] case. These treatment modalities can be helpful, and in fact, he did receive these treatments. The goal of physical therapy and therapeutic exercise is not pain relief, per se, but to increase blood flow to the region, range of motion and strength. But in [plaintiff's] case, physical therapy provided only temporal pain relief with no specific medical indication for its efficacy in eliminating the cause of the pain. Ordering [plaintiff] back to physical therapy would have been pointless and physical therapy that is too intense or prolonged would have worsened [plaintiff's] pain.
>
> A TENS unit and ice are a method of pain control only; they do not eliminate the

>cause of the pain.  In orthopedics, elimination of pain is not always the goal.  Pain can be beneficial to the patient.  Pain can stop the patient from aggravating his condition by engaging in activity that is too strenuous or prolonged.  Masking the pain without addressing the cause is seldom helpful, and is often harmful.

MSJ, Decl. Dr. Lovett ¶ 10, 11.

This quote sheds light about the decisions made by the defendants and other medical staff at MCSP.  It demonstrates that plaintiff's medical needs were priority, even if it resulted in pain and refutes plaintiff's assertions that defendants were acting with deliberate indifference.  Plaintiff has failed to meet his burden in establishing that a genuine issue as to any material fact actually does exist.

Plaintiff simply disagrees with the medical opinion of the treating doctors, but that cannot be the basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Plaintiff's argument is at times illogical.  When doctors recommended that plaintiff do mild exercise and stretching unsupervised, plaintiff argues that "for these two doctors to [recommend] this type of unsupervised treatment to a patient is a disregard of an excessive risk to the inmate's health."  Opposition at 15.  While plaintiff feels doing stretching and exercise unsupervised is ill advised, he believes that using the TENS unit frequently and unsupervised is proper, even though the doctors disagree.

Moreover, nearly all the doctors and the physical therapists recommended stretching, mild exercise and losing weight to reduce plaintiff's knee pain.  It is not clear if plaintiff ever followed any of those recommendations to improve his knee condition, preferring to instead rely on the TENS unit for temporary relief of solely the symptoms.  Plaintiff attempts to counter the medical evidence presented by defendants with his opinion that a TENS unit and ice were the appropriate course of action.  Plaintiff's conclusory opinions are insufficient.

Plaintiff has also failed to show that the surgery he received in 2008, was in any way caused by lack of physical therapy, the TENS unit or ice.  In fact, the doctors who treated

plaintiff and performed the surgery stated that the any problems in the knee were related to the original surgery. To the extent that plaintiff could argue the lack of proper care led to surgery, any such claim would be meritless.[3]

### Akintola

Akintola's only involvement with plaintiff's claims is when he met with plaintiff in response to plaintiff filing a health care request form on January 24, 2006, indicating that his continual knee pain kept him awake at night and limited his mobility but that his pain could be relieved by physical therapy and access to ice and the TENS unit.

On February 9, 2006, defendant Atkinola interviewed plaintiff regarding the appeal. Atkinola denied the request for ice and a TENS unit because he did not think plaintiff should be using those items without the supervision of a physical therapist. Atkinola referred the physical therapy request to the MAR committee so if physical therapy was granted the therapist could use a TENS unit and ice if appropriate.

Plaintiff alleges this conduct displayed deliberate indifference to plaintiff's medical needs. Akintola cannot be found to have acted with deliberate indifference in denying plaintiff's request to have unsupervised and unlimited use of medical devices that could potentially harm plaintiff. It was readily apparent that Akintola's denial was based on his opinion that plaintiff could be harmed. This does not reflect a state of mind to support a claim of deliberate indifference.

Akintola wisely referred plaintiff's request to the MAR committee and advocated on plaintiff's behalf to procure physical therapy for him which could then include a TENS unit and ice if recommended by the physical therapist. It is not clear how Akintola advocating on plaintiff's behalf could be construed as negligence let alone deliberate indifference. That the

---

[3] The court notes that doctors found little objective medical evidence of serious problems with plaintiff's knee yet Dr. Lovett advocated for surgery based on plaintiff's subjective complaints.

1  MAR committee did not agree with Akintola's view will not make him liable.

2         Ultimately, plaintiff has failed to show that the medical care he received was in
3  violation of the Eighth Amendment or either of the defendants were deliberately indifferent to his
4  serious medical needs, thus summary judgment should be granted to both defendants.

5         Qualified Immunity

6         Because the court has found that the conduct alleged by plaintiff does not state a
7  constitutional deprivation, the court need not address defendants' arguments for qualified
8  immunity.

9  IV.  Motion for Judicial Notice

10        Plaintiff seeks judicial notice that defendants' motion for summary judgment is
11 defective because defendants did not place the motion for hearing before the court.  Plaintiff's
12 motion is denied as frivolous as motions where one party is incarcerated and proceeding pro se
13 shall be submitted upon the record without oral argument.  Local Rule 230(l).

14 V.  Motion to Amend

15        Plaintiff seeks to file a third amended complaint substituting in several named
16 defendants who were previously identified as John Does.

17        The Federal Rules of Civil Procedure provide that a party may amend his or her
18 pleading "once as a matter of course at any time before a responsive pleading is served."
19 Fed.R.Civ.P. 15(a).  However, as in the instant case, once an answer has been filed, a party may
20 amend a pleading only by leave of court or by written consent of the adverse party.  See Rule
21 15(a)(2).  Although "[t]he court should freely give leave when justice so requires," under Rule
22 15(a)(2), and there is presumption in favor of granting leave to amend, such leave need not be
23 granted where such amendment (1) would prejudice the opposing party; (2) is sought in bad
24 faith; (3) produces an undue delay in litigation; or (4) is futile.  Eminence Capital LLC v.
25 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003), citing Foman v. Davis, 371 U.S. 178, 83 S.Ct.
26 227, 9 L.Ed.2d 222 (1962); Amerisource Bergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951

1  (9th Cir. 2006).  This circuit accords the greatest weight to "the consideration of prejudice to the
2  opposing party," the prejudice-showing burden resting on the opposing party.  Eminence Capital,
3  316 F.3d at 1052.  "Absent prejudice, or a strong showing of any of the remaining Foman factors,
4  there exists a *presumption* under Rule 15(a) in favor of granting leave to amend ."  Id.
5  [Emphasis in original].
6          Defendants oppose the motion to amend and note that this motion is brought three
7  and a half years after the action was filed and nearly one year after discovery closed.  Defendants
8  also note that they have submitted the instant motion for summary judgment and many of
9  plaintiff's new claims are not exhausted.
10         Defendants have fairly demonstrated that they would be severely prejudiced by
11  essentially starting this litigation all over again.  As plaintiff's claims appear unexhausted, it also
12  seems that any attempt by plaintiff to amend the complaint would be futile.  Most importantly,
13  based on the undersigned's analysis above, it is evident that no amount of amendment would
14  cure the deficiencies of plaintiff's complaint.  Plaintiff's motion to amend is therefore denied.
15         Accordingly, IT IS HEREBY ORDERED that:
16         1. Plaintiff's motion to file a surreply (Doc. 83) is granted;
17         2. Defendants' motion to strike the surreply (Doc. 85) is denied;
18         3. Plaintiff's motion for judicial notice is (Doc. 89) denied;
19         4. Plaintiff's motion to amend (Doc. 90) is denied.
20         IT IS HEREBY RECOMMENDED that defendants' motion for summary
21  judgement (Doc. 80) be granted and this case closed.
22         These findings and recommendations are submitted to the United States District
23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
24  days after being served with these findings and recommendations, any party may file written
25  objections with the court and serve a copy on all parties.  Such a document should be captioned
26  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

1  shall be served and filed within seven days after service of the objections.  The parties are
2  advised that failure to file objections within the specified time may waive the right to appeal the
3  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4  DATED: 07/19/2010

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH: AB
meye2584.sj